

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ANDREA GAIL JONES,

    Plaintiff,

v.                                    Civil Action No. 3:12cv443

SOUTHPEAK INTERACTIVE CORP.,
TERRY M. PHILLIPS
and
MELANIE J. MROZ,

    Defendants.

## MEMORANDUM OPINION

For the reasons set forth herein Terry M. Phillips' ("Phillips") and Melanie Mroz's ("Mroz") Fed. R. Civ. P. 12(b)(1) MOTIONS TO DISMISS (Docket Nos. 9, 11) are denied; defendants Phillips and Mroz's Fed. R. Civ. P 12(b)(6) MOTIONS TO DISMISS (Docket Nos. 10, 13) are granted; defendant SouthPeak Interactive Corp.'s ("SouthPeak") Fed R. Civ. P. 12(b)(6) MOTION TO DISMISS (Docket No. 15) is granted; and all defendants' MOTION TO DISMISS COUNT I BASED ON A TWO-YEAR STATUTE OF LIMITATIONS (Docket No. 61) is denied.

## FACTUAL AND PROCEDURAL BACKGROUND

This action arises out of Andrea Jones' ("Jones") tenure, and termination, as Chief Financial Officer of SouthPeak, which is a publisher of video games based in Midlothian, Virginia.[1] Jones was

---

[1] The Court, as it must at this stage, "[a]ccept[s] all well-pleaded allegations in the plaintiff's complaint as true and draw[s] all reasonable factual inferences from those facts in the plaintiff's

named Southpeak's Chief Financial Officer in October 2007. At all times relevant to this action, Phillips was Chairman of the Board of SouthPeak and Mroz was the President, Chief Executive Officer, and a Director of SouthPeak.

In February 2009, Phillips and Mroz agreed that Philips would advance $307,400 of his personal funds to enable SouthPeak to purchase 50,400 units of a computer game from Nintendo. (Compl. ¶¶ 33-34). Following receipt of the inventory, the Vice-President of Operations at SouthPeak, Patrice Strachan, instructed (a) that the inventory be reflected on the books of the company, but (b) that the advance made by Phillips not be listed as a payable or a liability. (Compl. ¶¶ 35-36). Strachan further directed that no one talk about the advance. (Compl. ¶ 36). As a result, the quarterly financial report for SouthPeak erroneously reflected the sale of the inventory, but not the cost of purchasing it. (Compl. ¶ 38). At some point toward the end of May 2009, Jones became aware of this discrepancy. (Compl. ¶ 40). Based on her conversations with persons at the company, Jones concluded that the failure to report the advance was part of an attempt by Phillips and SouthPeak to inflate the reported profits of the company. (Compl. ¶ 42).

favor." Edwards v. City of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999).

Between June 2009 and August 2009, Jones made numerous attempts to report the activity to the Audit Committee of SouthPeak and to its outside counsel, none of which led to any results. (Compl. ¶¶ 44-71). On August 12, 2009, Jones filed a complaint with the Enforcement Division of the Securities and Exchange Commission ("SEC"). (Compl. ¶ 72). On August 14, 2009, Phillips and Mroz informed the plaintiff that she was being terminated effective immediately. (Id. ¶ 74).

On October 5, 2009, Jones' counsel timely filed an administrative complaint with the Occupational Safety and Health Administration ("OSHA") as required by 18 U.S.C. § 1514A(b)(1)(A) and 29 C.F.R. § 1980.103. On July 23, 2010, Jones notified OSHA of her intention to pursue the matter in the district court as permitted by 18 U.S.C. § 1514A(b)(1)(B). On June 18, 2012, Jones filed this action against SouthPeak as well as Phillips and Mroz alleging that she had been terminated in retaliation for her report to the SEC Enforcement Division and seeking relief as provided for by the Sarbanes-Oxley Act of 2002 ("Sarbanes-Oxley"), codified at 18 U.S.C. § 1514A and the Dodd-Frank Wall Street Reform Act of 2010 ("Dodd-Frank"), codified at 15 U.S.C. § 78u-6.

On August 13, 2012, Mroz and Phillips filed their motions to dismiss asserting (1) that Jones had failed to exhaust the administrative remedies on the Sarbanes-Oxley claim as to them, thus

3

stripping the Court of jurisdiction; and (2) that Jones' Dodd-Frank claim was barred by the presumption against retroactivity or, in the alternative, did not permit suits against individuals. Contemporaneously, SouthPeak filed its motion to dismiss the Dodd-Frank claim against it because the statute did not apply retroactively. The parties conducted jurisdictional discovery on the administrative exhaustion question and filed their supplemental positions on the issue of jurisdiction. In the meantime, the defendants filed an additional motion to dismiss the Sarbanes-Oxley claim as untimely. Oral argument was held on all the motions on March 5, 2013 and the motions are now ripe for decision.

## DISCUSSION

Collectively, the motions present four basic questions: (1) whether the plaintiff adequately exhausted her administrative requirements as to the individual defendants (Phillips and Mroz) under Sarbanes-Oxley; (2) which statute of limitations applies to the Sarbanes-Oxley claim at issue here; (3) whether the provision in Dodd-Frank allowing for a discharged whistleblower to recover two times the owed back pay applies to conduct that occurred before the enactment of the provision; and (4) whether the term "employer," as used in Dodd-Frank, encompasses the individual officers of the corporation. These issues will be addressed in turn.

4

## Sarbanes-Oxley Claim

### Exhaustion of Administrative Remedies

Sarbanes-Oxley, as codified at 18 U.S.C. § 1514A(a), prohibits any publicly traded company, or any officer thereof, from discharging or otherwise discriminating against any employee who "provide[s] information, cause[s] information to be provided, or otherwise assist[s] in an investigation regarding any conduct which the employee reasonably believes constitutes a violation" of an enumerated set of federal laws and regulations. 18 U.S.C. § 1514A(a)(1). The statute further provides that "a person who alleges discharge or other discrimination by any person in violation" of the above section may "seek relief" by, initially "filing a complaint with the Secretary of Labor" and, "if the Secretary has not issued a final decision within 180 days of the filing of the complaint," the complainant may bring an action "for de novo review in the appropriate district court of the United States." 18 U.S.C. § 1514A(b)(1)(A)-(B). The statute goes on to direct that the complainant must make the administrative complaint as provided in 49 U.S.C. § 42121(b). 18 U.S.C. § 1514A(b)(2)(A).

Section 42121, in turn, provides that a person alleging discrimination must "file (or have any person file on his or her behalf) a complaint with the Secretary of Labor alleging such discharge or discrimination." 49 U.S.C. § 42121(b)(1). After the

complaint is filed, the Secretary must "notify, in writing, the person named in the complaint . . . of the allegations contained in the complaint, of the substance of evidence supporting the complaint, and of the opportunities that will be afforded to such person." Id. The Secretary has designated OSHA as the appropriate agency with which to file a retaliation complaint under §1514A. See 29 C.F.R. § 1980.103(c) ("The complaint should be filed with the OSHA office responsible for enforcement activities in the geographical area where the employee resides or was employed . . . ."). The pertinent regulation provides that "[n]o particular form of complaint is required. A complaint may be filed orally or in writing." 29 C.F.R. 1980.103(b).

The exhaustion requirement exists to allow "OSHA the opportunity to resolve the allegations administratively." Smith v. Psychiatric Solutions, Inc., 2009 WL 903624 at *8 (N.D. Fla. Mar. 31, 2009). There is no question that compliance with statutorily required administrative exhaustion is jurisdictional in nature. See e.g. JDS Uniphase Corp. v. Jennings, 473 F. Supp. 2d 705, 710 (E.D. Va. 2007) (noting that "[t]his exhaustion requirement is jurisdictional").

Jones filed her administrative complaint in the form of a three-page letter from her attorney, Thomas Bowden, to the Regional

Administrator of OSHA. To that letter, Jones attached a four-page narrative description of her discovery of and attempts to report the perceived violation, as well as copies of numerous communications that Jones had with various individuals before, during, and after her decision to report the violation to the SEC. See Administrative Complaint and Exhibits (Docket NO. 51-1). The letter from Mr. Bowden contained a series of bolded paragraph headings. Under Paragraph 2, the complaint purports to list: **"The names and addresses of the company(s) and person(s) who are alleged to have violated the Act (who the complaint is being filed against):"** In that paragraph, Jones' Complaint listed:

> SouthPeak Interactive Corporation
> 2900 Polo Parkway
> Midlothian, VA 23113
>
> Terry Phillips, Chairman of the Board
> Patrice Strachan, Vice President of Operations
> Melanie Mroz, Chief Executive Officer

After receiving the complaint, the OSHA regional office sent a letter to SouthPeak (but not to the individuals listed) notifying it that a claim had been filed. It is undisputed that OSHA failed to investigate the Sarbanes-Oxley claim against the individual defendants and that the individual defendants were not specifically notified by Jones of the claim against them until she notified them of the lawsuit. It would be unfair to impute OSHA's failures to Jones if she had adequately named the individual defendants in her

7

complaint. Therefore, the question is whether Jones properly filed an administrative complaint against the individual defendants.

The defendants rely, principally, on three decisions to support their contention that Jones failed properly to name the individual defendants: Smith v. Psychiatric Solutions, Inc., 2009 WL 903624 (N.D. Fla. March 31, 2009); Bozeman v. Per-Se Technologies, Inc., 456 F. Supp. 2d 1282 (N.D. Ga. 2006); and Hanna v. WCI Communities, Inc., 2004 WL 6072492 (S.D. Fla. Nov. 29, 2004). In each of those actions, the plaintiff had failed to clearly identify certain defendants in the "heading" or elsewhere in the administrative complaint and the court, accordingly, found that the administrative remedies had not been exhausted as to those defendants. See Smith, 2009 WL 903624 at *8 (dismissing a Sarbanes-Oxley complaint against particular defendants where the plaintiff "did not name [them] in the heading of her administrative complaint or indeed anywhere in her complaint."); Bozeman, 456 F. Supp. 2d at 1358 (granting summary judgment in favor of individual defendants where the plaintiff "specifically failed to name them in the heading of his administrative complaint"); Hanna, 2004 WL 6072492 at *3 (dismissing a Sarbanes-Oxley claim against a defendant where the plaintiff failed to name him in the administrative complaint). Tellingly, for the court in Hanna, the key question was not whether the defendant "was placed on notice that he had allegedly violated the law," rather the

8

OSHA complaint must serve to put OSHA "on notice that it was required to investigate [the defendant's] actions in this case." Id.

Jones concedes that courts have dismissed claims where "the plaintiff failed to name such defendants in a prominent manner." Pl. Second Supp. Mem. in Opp. (Docket No. 71) at 6. However, Jones argues that, because there is no required form for the OSHA complaint, a letter which names a defendant as a "major actor" constitutes sufficient identification in an administrative complaint. Jones also says that her OSHA complaint included attachments that named the individual defendants as actors in the alleged violation, and that, for that additional reason, the individual defendants were on notice. Accordingly, argues Jones, the individual defendants had been placed on notice that the claim submitted to OSHA was directed against them.

Jones relies principally on Morrison v. MacDermid, Inc., 2008 WL 4293655 (D. Colo. Sept. 16, 2008). In Morrison, as here, the plaintiff filed his OSHA complaint "in the form of a two page letter." 2008 WL 4293655 at *3. In the letter, "he clearly indicated whom he believed was involved in the termination" and he "specifically named [the defendant] as a major actor in the alleged wrongdoing." Id. Relying on the regulatory provision that specifies that there is no particular form in which a complaint must be filed, see 29 C.F.R. § 1980.103(b), the court found that the letter was sufficient to allow OSHA to "perform an adequate investigation." 2008 WL 4293655 at *3.

9

The facts in this action are substantially closer to those in Morrison than to those in Bozeman, Smith, and Hanna. Indeed, this case is even clearer than Morrison. While the plaintiff in Morrison submitted a pro se letter in which the individuals were named somewhere in her filing as being involved or as major actors, Jones, in her filing with OSHA, specifically identified the individual defendants under the heading: persons "who the complaint is being filed against." It could not have been clearer that Jones intended to name Phillips, Strachan, and Mroz in her administrative complaint. The defendants note, correctly, that Jones only listed the address of SouthPeak and not of the individuals, but this merely indicates a reasonable assumption that the officers of the corporation could be found at, or through, the corporation, it does not in any way detract from the obvious fact that Jones named the individuals in the complaint that she filed with OSHA.

Accordingly, Phillips' and Mroz's Fed. R. Civ. P. 12(b)(1) MOTIONS TO DISMISS (Docket Nos. 9, 11) will be denied.[2]

**Statute of Limitations**

Having determined that the Jones properly exhausted her administrative remedies, and that, therefore, the Court has

---

[2] It is simply not relevant that OSHA did not act in accord with that which was obvious. Jones directed her claim against Mroz, Phillips and Strachan. It would simply be wrong to impute to Jones, OSHA's incompetence.

subject-matter jurisdiction over the Sarbanes-Oxley claim, it is necessary next to assess the defendant's contention that the appropriate statute of limitations bars Jones' claim. To begin, the defendants argue that the appropriate statute of limitations is set forth in 28 U.S.C. § 1658(b) which provides:

> [A] private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)), may be brought not later than the earlier of--
> **(1)** 2 years after the discovery of the facts constituting the violation; or
> **(2)** 5 years after such violation.

Id. In response, Jones takes the view that the more general four-year statute of limitations provided for in 28 U.S.C. § 1658(a) applies to Sarbanes-Oxley whistleblower cases because they are not actions that "involve[] a claim of fraud," etc. Pl. Opp. (Docket No. 63) at 2. In the alternative, Jones argues that the statute of limitations was tolled during the pendency of her administrative complaint and that, even if the two-year statute of limitations applies, the claim was timely. Concluding that the four-year statute of limitations applies, the Court does not reach the question of tolling.

To establish a _prima facie_ case of retaliation, Jones must demonstrate:

> (i) that [she] engaged in protected activity,
> (ii) that the employer knew of the protected
> activity, (iii) that the whistleblower suffered
> an adverse personnel action, and (iv) that
> circumstances exist to suggest that the
> protected activity was a "contributing factor"
> in the adverse personnel action.

JDS Uniphase Corp. v. Jennings, 473 F. Supp. 2d 705, 711 (E.D. Va. 2007). To show that the activity was "protected" in a case where the employee is reporting suspected fraud, "the complaining employee's theory of such fraud must at least approximate the basic elements of a claim of securities fraud." Day v. Staples, 555 F.3d 42, 55 (1st Cir. 2009). In support of applying the shorter statute of limitations period, the defendants cite to a number of decisions that stand for the basic proposition that "fraud is an integral element of a whistleblower cause of action." Livingston v. Wyeth, Inc., 2006 WL 2129794 at *9 (M.D.N.C. July 28, 2006). For her part, Jones emphasizes decisions that stress the fact that, in order to prevail, the employee does not need to prove actual fraud. See e.g., Welch v. Chao, 536 F.3d 269, 275 (4th Cir. 2008) (noting that the standard is a reasonable believe of fraud).

Jones also notes that "numerous" courts have restricted § 1658(b) to claims that required "proof of fraudulent intent." The decisions on which Jones relies are largely inapposite. For example, she places considerable weight on the observation in In re Alstom SA Securities Litigation, 406 Fed. Supp. 2d 402, 412 (S.D.N.Y. 2005),

that § 1658(b) "by its plain text does not apply to claims under the securities laws that do not require any showing of fraudulent intent as <u>an element of the cause of action</u>." <u>Alstom</u>, however, dealt with the question of which statute of limitations applied to claims "grounds on assertions of negligence or strict liability." <u>Id.</u> at 413. Similarly, in <u>In re Federal National Mortgage Association Securities Litigation</u>, 503 F. Supp. 2d 25, 34-35 (D.D.C. 2007), the court collected cases for the proposition that § 1658(b) only applied to claims involving proof of fraudulent intent. But, that case dealt with the appropriate statute of limitations under § 18 of the Exchange Act, codified at 15 U.S.C. § 78r, which provided for recovery from "any person who . . . make[s] or cause[s] to be made any statement" which was false by any person who relied on the statement. Further, both of these decisions (as well as the decisions on which they rest) dealt with the appropriate statute of limitations for the underlying claim of a securities violation; not with retaliation claims.

The only decision that either party cites which holds that § 1658(b) applies to whistleblower claims under § 1514A does so without analysis and in addressing other issues. In <u>Ellis v. CommSCOPE, Inc.</u>, 2008 U.S. Dist. LEXIS 70543 at *13-14 (N.D. Tex. 2008), the court stated that § 1658(b) applied to whistleblower claims, while rejecting the claim that the plaintiff was required

to file his federal suit "promptly" after his notification to OSHA of his intent to seek review in the district court.

Jones also directs the Court to the language of the statute itself. And, of course, "the task of resolving the dispute over the meaning [of a statutory provision] begins where all such inquiries must begin: with the language of the statute itself." United States v. Ron Pair Enterprises, Inc., 489 U.S. 235, 241 (1989). For present purposes, the statute provides that an action "that involves a claim of fraud . . . in contravention of a regulatory requirement concerning the securities laws . . . may be brought not later than . . . 2 years after the discovery of the facts constituting the violation." 28 U.S.C. § 1658(b).[3] As Jones notes, the Supreme Court has interpreted the "discovery" language as possessing a meaning common in, but unique to, fraud cases and defined as the point at which, "in the exercise of reasonable diligence, [the facts] could have been discovered." Merck & Co v. Reynolds, 130 S. Ct. 1784, 1794 (2010).

The defendants' proposed application of § 1658(b) to whistleblower retaliation suits creates a problem of textual

---

[3] The statute further specifies that "securities laws" are "as defined in section 3(a)(57) of the Securities Exchange Act of 1934." 28 U.S.C. § 1658(b). The definitional provision, codified at 15 U.S.C. § 78c(a)(47), indicates that the term "securities laws" is confined to "the Securities Act of 1933, the Securities Exchange Act of 1934, the Sarbanes Oxley Act of 2002, the Trust Indenture Act of 1939, the Investment Company Act of 1940, the Investment Advisers Act of 1940, and the Securities Investor Protection Act of 1970." Id. (internal citations omitted).

analysis. Unlike all other private causes of action arising out of violations of the securities laws, a whistleblower retaliation claim involves _two_ separate and distinct "violations." First, there must be a reasonable belief that there is a violation of the securities law. Second, there must be a retaliatory personnel action, which itself is a violation of the law. If the Court were to apply § 1658(b) to whistleblower claims, the first, and most logical, question would be: two years from _which_ violation does the statute begin to run?

A quite natural reading of the statute would suggest that it was two years from the "fraud . . . in contravention of a regulatory requirement." However, because a whistleblower claim does not accrue until the alleged retaliatory action is taken, it would be entirely plausible that, if the statute of limitations runs two years from the discovery of the fraud, the statute of limitations would be exhausted before the whistleblower cause of action accrued.

That cannot have been the intent of Congress. Indeed, that result would be absurd and courts should never construe statutes to produce absurd results. See Helvering v. Hammel, 311 U.S. 504, 511 (1941); see also United States v. Kolon Indus., Inc., __ F. Supp. 2d __, 2013 WL 682896 at *5-6 (E.D. Va. Feb. 22, 2013). This leaves two possible options: either § 1658(b) does not apply to whistleblower claims (because they do not accrue upon discovery of the facts constituting the violation of the fraud) or the term "the

15

violation" must be read to refer neither to the claim of fraud nor even to the cause of action, but to the extrinsic act of retaliatory discharge. In essence, in the defendants' reading of the statute, the definite article "the" refers to an event not referenced in the statute. The Court declines to adopt such a tortured reading of the statute when a plain reading provides an interpretation that is clear, non-absurd, and logically consistent.

Accordingly, the Court concludes that the two-year statute of limitations provided by 28 U.S.C. § 1658(b) does not apply to whistleblower retaliation claims under 18 U.S.C. § 1514A. Rather, the four-year statute of limitations set forth in 28 U.S.C. § 1658(a) governs. Because the parties agree, as they must, that the statute was brought well within the four year period, the Court need not reach the question of the tolling of the statute of limitations while the administrative remedies are being exhausted.

For the foregoing reasons, the defendants' MOTION TO DISMISS COUNT I BASED ON A TWO-YEAR STATUTE OF LIMITATIONS (Docket No. 61) is denied.

**Dodd-Frank Claim**

In Count II of the Complaint, Jones asserts a violation of the Dodd-Frank whistleblower protection provision, which states that "no employer may discharge . . . a whistleblower . . . because of any lawful act done by the whistleblower" in providing information to

16

the SEC. 15 U.S.C. § 78u-6(h)(1)(A). Any individual who alleges "discharge or discrimination" as a result of providing information to the SEC may bring an action in the district court. 15 U.S.C. § 78u-6(h)(1)(B)(i). A prevailing plaintiff in entitled to be reinstated and to recover "2 times the amount of back pay otherwise owed to the individual, with interest; and compensation for litigation costs, expert witness fees, and reasonable attorneys' fees." 15 U.S.C. § 78u-6(h)(1)(C)(i)-(iii).

The defendants all assert that the application of Dodd-Frank, which became effective on July 22, 2010, to an alleged retaliatory discharge that took place in August 2009 would violate the deeply rooted presumption against statutory retroactivity. In addition, the individual defendants, Phillips and Mroz, argue that the term "employer," as used in § 78u-6, should not be read to provide for liability for individual supervisors or officers of the corporation.

There is no question that courts apply a "robust presumption against statutory retroactivity." Ward v. Dixie Nat'l Life Ins. Co., 595 F.3d 164, 172 (4th Cir. 2010). This presumption instructs that "courts assume that statutes operate prospectively only, to govern future conduct and claims, and do not operate retroactively, to reach conduct and claims arising before the statute's enactment." Id. The Supreme Court of the United States has set out the steps of the analysis that must be conducted "when an objection is made to applying

17

a particular statute said to . . . impose some burden on the basis
of an act or even preceding the statute's enactment." Fenandez-Vargas
v. Gonzalez, 548 U.S. 30, 37 (2006).

First, it must be determined "whether Congress has expressly
prescribed the statute's proper reach." Id. (quoting Landgraf v. USI
Film Prod., 511 U.S. 244, 280 (1994)). The parties generally agree,
as do other courts that have considered the question, that "nothing
in . . . the Act provides an express congressional intent regarding
retroactivity." Pezza v. Investors Capital Corp., 767 F. Supp. 2d
225, 228 (D. Mass. 2011).

If there is no clear congressional language, it then is
necessary to "try to draw a comparably firm conclusion . . . by
applying [the] normal rules of statutory construction."
Fernandez-Vargas, 548 U.S. at 37. Jones cites to § 78u-7 as evidence
of the intent "not to limit the temporal scope of recovery." Pl. Opp.
at 5. That section provides, in relevant part, that

> A whistleblower may receive an award pursuant
> to section 78u-6 of this title, as added by this
> subtitle, regardless of whether any violation
> of a provision of the securities laws, or a rule
> or regulation thereunder, underlying the
> judicial or administrative action upon which
> the award is based, occurred prior to July 21,
> 2010.

15 U.S.C. § 78u-7(c) (emphasis added). According to Jones, this is
clear evidence that the statute is intended to be retroactive. To

18

the contrary, this provision appears to cut against Jones' argument, because the statutory text limits the retroactivity to <u>violations of the provisions of the securities laws</u>, and not <u>retaliations</u> for reporting them. The provision sets out how Congress could have easily made the statute retroactive, but provides little to no evidence that it did. Indeed, courts have generally been willing to infer an intention <u>not</u> to apply a statutory provision retroactively where other provisions in the same statute have been made explicitly retroactive. See <u>INS v. St. Cyr</u>, 533 U.S. 289, 318-19 (2001) ("Another reason for declining [to apply a section retroactively] is provided by Congress' willingness, in other sections of [the act], to indicate unambiguously its intention to apply specific provisions retroactively."); <u>Lindh v. Murphy</u>, 521 U.S. 320, 336 (1997) (applying the "negative implication" that, where some provisions are explicitly described as operating retroactively, the others do not).

Even more basically, <u>Landgraf</u> instructs that courts are to find that Congress intended a statute to operate retroactively only where the court finds that "Congress itself has affirmatively considered the potential unfairness of retroactive application and determined that it is an acceptable price to pay for the countervailing benefits." <u>Landgraf</u>, 511 U.S. at 272-73. Neither the text nor the history of Dodd-Frank offer evidence that such balance of interests was considered by Congress before its enactment. See also <u>Pezza</u>, 767

F. Supp. 2d at 232 ("It does not appear Congress [considered the balance between "potential unfairness" and "countervailing benefits"] when enacting the sprawling Dodd-Frank legislation.").

If clear congressional intent respecting retroactivity cannot be discerned, the court next must ask "whether applying the statute to the person objecting would have a retroactive consequence in the disfavored sense of affecting substantive rights, liabilities, or duties on the basis of conduct arising before its enactment." Fernandez-Vargas, 548 U.S. at 37. Specifically, it is necessary to "ask whether the new provision attaches new legal consequences to events completed before its enactment." Landgraf, 511 U.S. at 269-70.

Jones argues that the whistleblower protection of Dodd-Frank is substantially similar to the provision in Sarbanes-Oxley (which undisputedly predates the actions at issue here). Pl. Opp. at 5. Similarly, Jones notes that the relief under Dodd-Frank is "nearly" the same as the relief under Sarbanes-Oxley. Id. at 6. The difference is that, while Sarbanes-Oxley authorizes the recovery of back pay, Dodd-Frank authorizes the recovery of two times back pay. According to Jones, because Sarbanes-Oxley allows the court to grant "all relief necessary" to the prevailing party, id. (quoting 18 U.S.C. § 1514A(c)(1)), a court may award additional damages under Sarbanes-Oxley, whereas Dodd-Frank limits the recoverable damages to two times the back pay. See 15 U.S.C. § 78u-6(h)(1)(C)(ii).

Therefore, in Jones' view, retroactive application of Dodd-Frank would not "increase liability" of SouthPeak for events that took place before the statute was enacted. Pl. Opp. at 6.

Jones has cited, and the Court can find, no authority definitively interpreting the language "all relief necessary" in Sarbanes-Oxley. At least one court has interpreted the phrase to include "lost future earnings [the plaintiff] would have received absent the employer's unlawful activity." Hanna v. WCI Communities, Inc., 348 F. Supp. 2d 1332, 1334 (S.D. Fla. 2004). Others have flatly rejected such claims. See Walton v. Nova Information Sys., 514 F. Supp. 2d 1031, 1035 (E.D. Tenn. 2007) (rejecting the claim that Sarbanes-Oxley allowed recovery for "non-pecuniary" damages "such as injury to reputation, mental and physically distress, or punitive damages"). While the law in the area is muddled, there are no decisions that would suggest that Sarbanes-Oxley would expose an employer to the sort of guaranteed double damage regime that Dodd-Frank imposes.

In Landgraf, itself a case about the retroactive application of a damages provision, the Supreme Court observed that, in no case "in which Congress had not clearly spoke, have we read a statute substantially increasing the monetary liability of a private party to apply to conduct occurring before the statute's enactment." 511 U.S. at 284. Because Dodd-Frank serves to increase the liability

imposed on the losing party, and because the statute lacks evidence of clear congressional intent to do so retroactively, the Court concludes that Dodd-Frank cannot be applied retroactively in a situation such as this.

Accordingly, the defendants' motions to dismiss as to the Dodd-Frank claim are granted. Having concluded that Dodd-Frank cannot be imposed retroactively, the Court does not reach the question of whether Dodd-Frank authorizes suits against individual supervisors or corporate officers.

## CONCLUSION

For the reasons set forth above, defendants Phillips' and Mroz's Fed. R. Civ. P. 12(b)(1) MOTIONS TO DISMISS (Docket Nos. 9, 11) are denied; Phillips' and Mroz's Fed. R. Civ. P 12(b)(6) MOTIONS TO DISMISS (Docket Nos. 10, 13) are granted; defendant SouthPeak Interactive Corp.'s ("SouthPeak") Fed R. Civ. P. 12(b)(6) MOTION TO DISMISS (Docket No. 15) is granted; and all defendants' MOTION TO DISMISS COUNT I BASED ON A TWO-YEAR STATUTE OF LIMITATIONS (Docket No. 61) is denied.

It is so ORDERED.

_____  /s/  *REP*

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: March 19, 2013

22