

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division


ANDREA GAIL JONES,

    Plaintiff,

v.                    Civil Action No. 3:12cv443

SOUTHPEAK INTERACTIVE
CORPORATION OF DELAWARE,
et al.,

    Defendants.

### MEMORANDUM OPINION

This matter is before the Court on the SOUTHPEAK DEFENDANTS' MOTION FOR REMITTITUR, A NEW TRIAL, AND/OR TO AMEND THE JUDGMENT UNDER RULES 59 AND 60 (Docket No. 150). For the reasons set forth below, the motion will be granted in part and denied in part.

### PROCEDURAL BACKGROUND AND STATEMENT OF FACTS

This action arises out of Andrea Jones' ("Jones") tenure, and termination, as Chief Financial Officer ("CFO") of SouthPeak, a publisher of video games based in Midlothian, Virginia. Jones was named SouthPeak's Chief Financial Officer in October 2007. At all times relevant to this action, Terry M. Phillips ("Phillips") was Chairman of the Board of SouthPeak and

Melanie J. Mroz ("Mroz") was the President, Chief Executive Officer, and a Director of SouthPeak.

In February 2009, Phillips and Mroz agreed that Philips would advance $307,400 of his personal funds to enable SouthPeak, which was otherwise financially unable to do so, to purchase for its inventory 50,400 units of a computer game from Nintendo. After SouthPeak received shipment of the Nintendo games, the Vice-President of Operations at SouthPeak, Patrice Strachan, after talking with Phillips, instructed: (a) that the inventory be reflected on the books of the company, but (b) that the advance made by Phillips not be listed on SouthPeak's books as a payable or a liability. Strachan also directed that no one discuss the advance with Jones.

As a result, SouthPeak's quarterly financial report to the Securities and Exchange Commission ("SEC") reflected the inventory, including some sales thereof, but did not reflect the cost of purchasing that inventory. At some point toward the end of May 2009, Jones became aware of this discrepancy. Based on her conversations with persons at the company, Jones concluded that the failure to report the advance was part of an attempt to inflate SouthPeak's reported profits.

Between June 2009 and August 2009, Jones made several reports about the financial irregularity to the Audit Committee of SouthPeak's Board of Directors and to the company's outside

counsel, none of which led to any remedial action. On August 12, 2009, Jones filed a complaint with the Enforcement Division of the SEC. On August 14, 2009, Phillips and Mroz informed Jones that she was being terminated effective immediately.

On April 21, 2011, the SEC initiated cease-and-desist proceedings against SouthPeak and a SouthPeak officer who was not a defendant in this action.[1] The result of the SEC's investigation was a Consent Order, finding that SouthPeak and the named corporate officer violated Sections 13(a), 13(B)(2)(A) and 13(b)(2)(B) of the Securities and Exchange Act, and ordering the responsible parties to cease-and-desist from future violations of the Act. The factual basis for the SEC's finding of securities law violations was the unreported payment by Phillips that had initially aroused Jones's concerns.

Believing that her termination violated the anti-retaliation provision of the Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745 (2002)("SOX"), Jones timely filed an administrative complaint with Occupational Safety and Health Administration ("OSHA") as required by SOX. See 18 U.S.C. § 1514A(b)(1)(A) and 29 C.F.R. § 1980.103. On July 23, 2010, Jones notified OSHA of her intention to pursue the matter in the district court as permitted by SOX, 18 U.S.C. § 1514A(b)(1)(B).

---

[1] Phillips was named as a relevant person in the proceedings, but was not a named defendant. Mroz was not named in the proceedings.

3

On June 18, 2012, Jones filed this action against SouthPeak as well as Phillips and Mroz alleging that she had been terminated in retaliation for her report to the SEC and seeking relief as provided in SOX, codified at 18 U.S.C. § 1514A, and the Dodd-Frank Wall Street Reform Act of 2010, codified at 15 U.S.C. § 78u-6.  After the Court dismissed Jones' claim for relief under the Dodd-Frank Act, Jones' claim for relief under SOX proceeded to trial.

Jones claimed that she was terminated in retaliation for her whistleblowing activity.  All three Defendants were represented by the same lawyer.  All three defended in large measure on the theory that Jones' employment was terminated because she was incompetent.  Phillips and Mroz also defended on the additional theory that they had done nothing wrong and therefore were not liable even if the corporation was.

On July 18, 2013, after a four day trial, the jury found that all three Defendants were liable to Jones.  The jury returned its verdict, awarding Jones $593,000 in back pay and $357,000 in compensatory damages against SouthPeak.  Although the jury also found that Phillips and Mroz were liable to Jones for violating the anti-retaliation provisions of SOX, it did not assess any damages against them.

The verdict was reported on a verdict form to which counsel agreed at the end of the charge conference.[2]  That form was as follows:

## Verdict

### SouthPeak Interactive Corporation

Please check one:

[  ] As for Andrea Jones' Sarbanes-Oxley claim against SouthPeak Interactive Corp., we the jury find in favor of Jones and against SouthPeak Interactive Corp. and that damages should be awarded against SouthPeak Interactive Corp. in the amount of back pay with interest:_____, and compensatory damages in the amount of:_____.

or

[  ] As for Andrea Jones' Sarbanes-Oxley claim against SouthPeak Interactive Corp., we the jury find in favor of SouthPeak Interactive Corp.

### Terry Phillips

Please check one:

[  ] As for Andrea Jones' Sarbanes-Oxley claim against Terry Phillips, we the jury find in favor of Jones and against Terry Phillips and further find that damages should be awarded against Philips in the amount of back pay with interest: _____, and compensatory damages of:_____.

or

---

[2] Counsel submitted verdict forms along with their instructions. (Docket No. 116, Attachment 1 at 37-45 (Plaintiff)); (Docket No. 117, at 20-26 (Defendants)). The form actually used was a version that was submitted by Jones, but modified slightly after discussion among counsel. See Trial Tr. 27:20-30:15 (Docket No. 143).

[   ]   As for Andrea Jones' Sarbanes-Oxley claim against Terry Phillips, we the jury find in favor of Phillips.

### Melanie J. Mroz

Please check one:

[  ] As for Andrea Jones' Sarbanes-Oxley claim against Melanie J. Mroz, we the jury find in favor of Jones and against Mroz and further find that damages should be awarded against Mroz in the amount of back pay with interest:_____, and compensatory damages of:_____.

<u>or</u>

[   ]   As for Andrea Jones' Sarbanes-Oxley claim against Melanie J. Mroz, we the jury find in favor of Mroz.

SO SAY WE ALL.

_____
              Foreperson


DATED: _____

Thus, the report of the jury's verdict was made by having the foreperson check a box to indicate the jury's affirmative or negative judgment on liability, and then filling in the appropriate amount of back pay and compensatory damages awarded in conjunction with each affirmative finding of liability.

Considering the evidence and the way in which the case was argued, the damages component of verdict form, as completed by the jury, could have been interpreted as a jury finding that there was no liability against Mroz or Phillips. But the

6

liability component of the verdict form reported that the individual Defendants were liable. Because of the ambiguous and potentially inconsistent verdict against Phillips and Mroz, the Court spoke directly to the jury after conferring with counsel:

> Ladies and gentlemen, I notice that in one place you articulate a sum to be assesses as damages for compensatory and back pay. In two other places you find the respective defendants liable but express no damage figure at all. It is unclear to us whether you are finding that that particular defendant caused no damage or you are simply trying to avoid awarded more than you awarded, more damage tha[n] you found that Ms. Jones had suffered. I don't know that I made it clear when I was giving the instructions to you. I thought I did.
>
> But no matter what figure you put down here, if your intent was to give her damages, she will only get one damage. She won't get damage from each person. But if you truly intended for your finding to be that there is no damage attributable to Mr. Philips' conduct that led to your finding of liability, and no damage attributable to Ms. Mraz's conduct that led to your finding of liability, then your verdict form is as it is. However, if your finding is that Mr. Philips caused the damage or Ms. Mr[o]z caused the damage, then your verdict form is not correctly stated.
>
> You should not be concerned if you find that there is damage that there will be more recovered than was asked for, and then you award. That's the job of the Court to keep that from happening. So I'm going to let you go back and take your verdict form, and if you mean it, with those instructions, you can return it, or you can amend it, or you can do such else, or send a question, or do whatever you need to do. . .
>
> I am not by giving you this instruction trying to do anything but clear up what

7

appears to be a problem. I am not telling you what you have to do, nor suggesting that you need to put a damage figure in either of those places where you have a zero, but we need to make sure we have a verdict that we know what you are doing.

Trial Tr. 960:5-962:17 (Docket No. 149).

The jury subsequently returned to the jury room. Shortly thereafter the jury passed a note to the Court, which read as follows: "From SouthPeak we want a total of 593,000 back pay [and] 357,000 compensatory. We do not find that Terry Phillips or Melanie Mroz are individually responsible for any amount."

Having received that note, the Court again conferred with counsel and expressed the view that, in light of the statement made in the note, the jury needed to amend the verdict form. The Court asked counsel whether they agreed. The following exchange then occurred:

MR. THORSEN: I agree, Your Honor.

THE COURT: All right.

MR. HOLDEN: I agree, Your Honor. Well--

THE COURT: They need to make a finding that says, We do not find  -- I don't' have it in front of me, but they need to check the one that says you're not liable.

MR. HOLDEN: They need to check that box.

THE COURT: And eliminate the other box.

MR. HOLDEN: Right.

THE COURT: Do you agree with that?

8

MR. THORSEN: Apparently, that's what their decision is, Judge.

THE COURT: All right.

Trial Tr. 963:14-964:2 (Docket No. 149). Thereupon, the jury was asked to return to the courtroom and the following discussion took place:

THE COURT: Madam Foreperson, we have your note and thank you for it. You say that, We do not find that Terry Phillips or Melanie Mroz are individually responsible for any amount. Have you amended your verdict form to reflect that now or not?

THE JURY [sic]: We left it the same with the zero.

THE COURT: But when you say they are not responsible for that, do you mean that they do not have any responsibility?

JURY FOREPERSON: Individually.

THE COURT: Individually.

JURY FOREPERSON: We awarded the backpay and compensatory damages from Southpeak.

THE COURT: Against the corporation.

THE JURY [sic]: Exactly. Not against Terry Phillips or Melanie Mroz.

THE COURT: And you find there are no damages -- that she didn't have a claim against them; is that right?

JURY FOREPERSON: Right.

THE COURT: That's what you're saying?

JURY FOREPERSON: Right.

9

> THE COURT: Then what you need to do is amend your verdict to that second box in each of the categories. Under Mr. Phillips -- I don't have the form in front of me. Let me have it just a minute.
>     I take it that this is what you're saying your finding is: As for Andrea Jones's Sarbanes Oxley claim against Terry M. Phillips, we, the jury, find in favor of Phillips; is that right?
>
> JURY FOREPERSON: That's right.
>
> THE COURT: And the same would be true for Ms. Mroz?
>
> JURY FOREPERSON: Right.
>
> THE COURT: Then what you need to do is eliminate the checkmarks [in the box finding liability for Phillips and Mroz] and initial it, if you will, up here, and check that box [finding no liability for Phillips and Mroz] in each place on this form, and initial it there, and then we will have the verdict. Thank you.

Trial Tr. 964:6-965:19 (Docket No. 149). In other words, the jury was informed that, given what the foreperson told the Court was the intended verdict, the jury should amend the verdict form to accurately reflect the intended verdict. The amendment would eliminate the check mark from the boxes for the findings that read:

> [  ] As for Andrea Jones' Sarbanes-Oxley claim against Terry Phillips, we the jury find in favor of Jones and against Terry Phillips and further find that damages should be awarded against Philips in the amount of back pay with interest _____, and compensatory damages in the amount of _____.

[   ] As for Andrea Jones' Sarbanes-Oxley claim against Melanie J. Mroz, we the jury find in favor of Jones and against Mroz and further find that damages should be awarded against Mroz in the amount of back pay with interest _____, and compensatory damages in the amount of _____.

and add check marks to the boxes for the findings that read:

[   ] As for Andrea Jones' Sarbanes-Oxley claim against Terry Phillips, we the jury find in favor of Phillips.

[   ] As for Andrea Jones' Sarbanes-Oxley claim against Melanie J. Mroz, we the jury find in favor of Mroz.

The foreperson was instructed to place her initials next to each of the amended entries. The Court then asked:

> Do you need to retire or can you do it here?
>
> JURY FOREPERSON: I don't need to retire, but evidently someone else does.[3]
>
> THE COURT: All right.  You need to discuss things further; is that correct?
>
> JURY FOREPERSON: Yes.
>
> THE COURT: All right. Thank you. You-all retire to discuss your verdict.

Trial Tr. 965:21-966:3 (Docket No. 149).

The jury returned for a third time and handed the Court an amended verdict form.  It reflected a finding against SouthPeak in favor of Jones on liability and an award in favor of Jones

---

[3] During the colloquy one or more of the jurors communicated the need to retire apparently for further discussion.

for $593,000 in back pay damages against SouthPeak, but no compensatory damages. The amended verdict form, like the original form, reflected a finding against Phillips and Mroz in favor of Jones on liability. The jury awarded no back pay damages against Phillips and Mroz, but it assessed compensatory damages in the amount of $178,500 against each of them.

After the jury, speaking as a group, confirmed that the foregoing was its verdict, counsel for the Defendants asked for entry of the verdict as originally reported. Then he changed the request and suggested that the jury "go back and reconsider the issue," Trial Tr. 971:3 (Docket No. 149), because in his view, the jury had disregarded the instructions by halving the compensatory award of $357,000 originally returned against SouthPeak and assessing one-half ($178,500) to each of Phillips and Mroz in the amended verdict.

When asked what instructions counsel for the Defendants considered the jury to have disregarded, counsel pointed to the instruction to consider each defendant individually.[4]   Instead,

_____

[4]  That instruction, No. 19A, was:
     "Although there is more than one defendant in this action, it does not follow from that fact alone that if one defendant is liable to the plaintiff, all defendants are liable.
     You must give separate and individual consideration to each defendant. Each defendant is entitled to have his or her case determined from evidence as to his or her own acts, statements, and conduct and any other evidence in the case which may be applicable to him or her."

said counsel: "[t]hey considered this as a whole and apportioned it among all of them as a group instead of individually." Trial Tr. 973:4-6 (Docket No. 149). When asked what relief was sought, counsel asked for a mistrial "because the verdict doesn't fit the facts, it doesn't fit logically, and it doesn't fit with the written instructions." Id. at 973:18-20. As support for this view, counsel explained: "[y]ou can't find no damages, and then one; and then split apart. I think they clearly have disregarded the instruction." Id. at 973:22-24. The motion for mistrial was denied upon a finding that the jury, in fact, followed the instruction to decide the case against each defendant individually. Finding no need to require further deliberations on the basis argued, the Court directed that the jury be polled.[5] Obviously, if the poll had indicated a lack of unanimity, the jury would have been asked to further deliberate or the possibility of a mistrial would have been considered. It did not. The Clerk polled the jury and every member affirmed the revised verdict. The Court instructed the Clerk to enter the verdict and the Defendants made an oral motion in open court for a new trial under Rule 59(a) or an amended judgment under Rule 59(e). A briefing schedule was set and argument was heard.

---

[5] Neither the denial of the suggestion for further deliberation nor the denial of the request for a mistrial was raised in the motion now under consideration.

13

## DISCUSSION

### 1.   Rule 59 Standards

A motion under Federal Rule of Civil Procedure 59 must be filed no later than 28 days after the entry of the judgment.[6] Fed. R. Civ. P. 59(e).  This motion was timely.  Under a motion to amend or alter a judgment pursuant to Rule 59(e), "A court may alter or amend the judgment if the movant shows:  (1) an intervening change in the controlling law; (2) new evidence that was not available at trial; or (3) that there has been a clear error of law or a manifest injustice." Robinson v. Wix Fitration Corp. LLC, 599 F.3d 403, 407 (4th Cir. 2010).

"[A] motion made under Rule 59(a) permits the Court to weigh the evidence and to consider the credibility of witnesses." Bennett v. R & L Carriers Shared Servs, LLC, 744 F.Supp 2d 494, 509 (E.D. Va. 2010).  Rule 59 permits a new trial on all or some of the issues "for any reason which a new trial has heretofore been granted in an action at law in federal court." Fed.R.Civ.P. 59(a)(1)(A).  The Fourth Circuit's list of

---

[6] The title and introduction of the Defendants' Memorandum contains a reference to Rule 60. The Court assumes that this is meant to be a reference to Rule 60(b) and a motion for relief from an adverse judgment. However, the record does not indicate that the Defendants ever made a motion under Rule 60(b) and the defendants' brief contains no reference to it. Furthermore, a motion filed under both Rule 59(e) and 60(b) should only be analyzed under Rule 59(e) if it was filed before the Rule 59(e) deadline. See Robinson v. Wix Filtration Corp. LLC, 599 F.3d 403, 412 (4th Cir. 2010).

acceptable reasons includes: "[1] the verdict is against the clear weight of the evidence, or [2] is based upon evidence which is false, or [3] will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict." Atlas Food Sys. and Servs., Inc. v. Crane Nat. Vendors, Inc., 99 F.3d 587, 594 (4th Cir. 1996).

"Remittitur, which is used in connection with Fed.R.Civ.P. 59(a), 'is a process, dating back to 1822, by which the trial court orders a new trial unless the plaintiff accepts a reduction in an excessive jury award.'" Id. (quoting Atlas Food Sys. & Servs., Inc. v. Crane Nat'l Vendors, Inc., 99 F.3d 587, 593 (4th Cir. 1996)). "[T]he power and duty of the trial judge to set aside [an excessive] verdict is well-established, the exercise of the power being regarded not in derogation of the right of trial by jury but one of the historic safeguards of that right." Virginian Ry. Co. v. Armentrout, 166 F.2d 400, 408 (4th Cir. 1948) (quoted by Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 304 (4th Cir. 1988)). "[A] damages verdict must be set aside if the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice.'" Cline, 144 F.3d at 305 (quoting Johnson v. Parrish, 827 F.2d 988, 991 (4th Cir. 1987)). A damages award will also be set aside if "no substantial

evidence is presented to support it." Barber v. Whirlpool Corp., 34 F.3d 1268, 1279 (4th Cir. 1994). "[A]n award of substantial compensatory damages . . . must be proportional to the actual injury incurred . . . The award must focus on the real injury sustained . . ." Hetzel v. County of Prince William, 89 F.3d 169, 173 (4th Cir. 1996) (quoting Piver v. Pender County Bd. Of Educ., 835 F.2d 1076, 1082 (4th Cir. 1987)).

Our Court of Appeals has made clear that district courts are to "scrupulously analyze an award of compensatory damages for a claim of emotional distress predicated exclusively on the plaintiff's testimony." Price v. City of Charlotte, 93 F.3d 1241, 1251 (4th Cir. 1996). The same careful scrutiny is warranted where, as here, the evidence about emotional distress comes from the plaintiff and a spouse. "[A]lthough specifically recognizing that a plaintiff's testimony can provide sufficient evidence to support an emotional distress award, we have required a plaintiff to 'reasonably and sufficiently explain the circumstance of [the] injury and not resort to mere conclusory statements.'" Sloane v. Equifax Information Services, LLC, 510 F.3d 496, 503 (4th Cir. 2007) (quoting Price, 93 F.3d at 1251). "[S]eriatim recitations of 'depression' or 'hurt feelings' as evidence of emotional distress offered by the plaintiff fail to meet this standard." Price, 93 F.3d at 1251. "[T]he evidence of

the emotional distress must be demonstrable, genuine, and adequately explained." Id. at 1251–52.

In Knussman v. Maryland, 272 F.3d 625, 640 (4th Cir. 2001), the Fourth Circuit stated:

> In determining whether an award of damages for emotional distress for a constitutional deprivation is excessive, an appellate court may look to a number of factors: medical attention resulting from the emotional duress; psychiatric or psychological treatment; the degree of such mental distress; the factual context in which the emotional distress developed; evidence corroborating the testimony of the plaintiff; the nexus between the conduct of the defendant and the emotional distress; mitigating circumstances, if any; physical injuries suffered as a result of emotional distress; and loss of income, if any.

Cf. Sloane, 501 F.3d at 503–04 (applying the Knussman factors in a context that did not involve a deprivation of Constitutional rights). "Although the Fourth Circuit has ruled on a succession of cases . . . where the awards have been too high by pointing to some factors that might be relevant to a court's analysis, the Circuit has failed to enumerate any specific formula to provide the district courts more guidance." Bennett v. Fairfax County, 432 F.Supp.2d 596, 606 (E.D. Va. 2006). Nonetheless, there is no reason that a district court may not, or should not, be guided by the factors identified in Knussman.

17

**3.   The Jury's Initial and Amended Verdicts and the Defendants' Motion for a New Trial Absolute**

The first issues to take up are the Rule 59(a) and 59(e) motions as they are directed to the discrepancy between the initial and amended verdicts.   The Defendants argue that the initial verdict returned was neither ambiguous nor inconsistent and thus should have been entered.   Mem. at 14.   They further argue that the amended verdict should be rejected for its division of compensatory and back pay damages between the defendants. Mem. at 17. The Defendants request the entry of the initial verdict or, in the alternative, a new trial. These arguments will be addressed in turn.

As the record shows, the initial verdict form ambiguously reflected a general verdict as to the liability of Phillips and Mroz without assessing damages against either of them.   In closing argument, counsel for Phillips and Mroz vigorously had argued that neither of them was liable to Jones at all. But, the evidence about the cause and nature of Jones' damages did not lend itself to a finding of zero damages against Phillips and Mroz if they were found liable as was reflected in the initial jury verdict form. Under those circumstances, the return of a zero damage award and a finding of liability presented the prospect that the jury may not have considered Mroz and Phillips to be liable at all.   Also, it was unclear whether the jury

18

truly intended to find that the individual defendants were not responsible for any of Jones' damages, or if the jury merely wished to prevent Jones from recovering more in compensatory damages than the $357,000 it found that she had sustained.

Verdicts of this sort are not commonplace, but they are not a rarity either, for as the Ninth Circuit has noted, "[a] line of cases involv[ing] discrepancies between findings of liability and damage awards, typically arising when a jury finds liability but nonetheless awards zero damages." Zhang v. Am. Gem Seafoods, Inc., 339 F.3d 1020, 1036 (9th Cir. 2003) (citing Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474 (1933)). Such discrepancies "involve purported conflicts between legal conclusions," and a number of analogous cases have held that general verdicts are legally valid even if they are legally inconsistent. See id. at 1035-1036 (citing Mosley v. Wilson, 102 F.3d 85, 90 (3d Cir. 1996); Arthur Pew Constr. Co. v. Lipscomb, 965 F.2d 1559, 1571 (11th Cir. 1992); Merchant v. Ruhle, 740 F.3d 86, 91 (1st Cir. 1984) Hines v. IBG Intl., Inc. 813 F.2d 1331, 1334 (4th Cir. 1987); Globus v. Law Research Serv., Inc., 418 F.3d 1276, 1290 n.7 (2d Cir. 1969)).

Thus, although apparent inconsistencies between general liability verdicts and damage awards are not necessarily fatal, see id.; Hines v. IBG Intl., Inc. 813 F.2d 1331, 1334 (4th Cir. 1987); Sython IP, Inc. v. Pfizer Inc., No.1:05cv1267, 2007 WL

1075194, at *5 & n.14 (E.D. Va. Apr. 6, 2007) (citing Zhang and Hines), it is preferable for the Court to clear up an apparent inconsistency before discharging the jury. See Lavoie v. Pacific Press & Shear Co., 975 F.2d 48, 53 (2d Cir. 1992) (suggesting "resubmission of the determinations for reconsideration or clarification" would be a preferred response to apparent inconsistencies); see also Fed.R.Civ.P. 49(b)(3) (permitting courts to "direct the jury to further consider its answers and verdict" when presents with a general verdict that conflicts with written answers to questions of fact); cf. Ladnier v. Murray, 769 F.3d 195, 198 & n.3 (4th Cir. 1985) (suggesting that resubmission of issues to jury in order to resolve apparent inconsistencies in a special verdict form would have been ideal).

Here the Court and the parties were confronted with a quintessential version of inconsistent verdicts: a finding of liability with no damages award. It was therefore appropriate to have the jury eliminate the apparent inconsistency before it was discharged. As the ensuing events disclosed, the initial verdict did not represent a view upon which there was unanimous agreement. Upon further reflection, the jury reached a result that was unanimous.

The Defendants also argue that the Court should reject the amended verdict and order a new trial because in it the jury

allocated all of the back pay damages to the corporate Defendant and all of the compensatory damages to the individual Defendants. Mem. at 17. But the Defendants have offered no authority for the proposition that this renders the verdict invalid, for the simple reason that the Fourth Circuit does not embrace that position: "Even if the verdicts are inscrutable, however, their apparent inconsistency is not fatal . . . It has long been accepted that inconsistent verdicts in criminal cases must be accepted. The same principle has been applied in civil cases." Hines v. IBG Intl., Inc. 813 F.2d 1331, 1334 (4th Cir. 1987)(citing Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474 (1933); Jayne v. Mason & Dixon Lines, Inc., 124 F.2d 317 (2d Cir. 1941)); see also Intl. Longshoreman Union v. Hawaiian Pineapple Co., 226 F.2d 875, 881 (9th Cir. 1955). Such inconsistencies are the "jury's prerogative." Intl. Longshoreman Union v. Hawaiian Pineapple Co., 226 F.2d 875, 881 (9th Cir. 1955). A finding that the individual Defendants were responsible for Jones' compensatory damages was not against the weight of the evidence. Nor was a finding that the corporate Defendant was responsible for Jones' back pay damages. The Defendants only take issue with the combination of the two general awards, but the Court may not reject the amended verdict and order a new trial simply because the jury found distinctions in the Defendants' actions that the Defendants did not themselves

perceive. And unlike the initial verdict, the amended verdict had the agreement of all jurors, a fact confirmed by a poll of the jury. See Trial Tr. 978:3-979:4 (Docket No. 149). The amended verdict therefore best reflects the findings of the unanimous jury and was properly accepted as its true verdict. The motion for a new trial therefore will be denied.

**4.   The Defendants' Motion to Amend the Judgment**

**a.    The Division Of The Compensatory Damages Between Mroz And Phillips**

The Defendants next argue that the amended verdict contained an ambiguity as to the compensatory awards against Mroz and Phillips and that the Court should interpret the awards as a single joint and several award of $178,500 instead of two distinct awards in that amount. The Defendants also request an amendment to the judgment to reflect that interpretation. Analysis of that argument begins with the observation that, in the immediate aftermath of the amended verdict, counsel and the Court agreed as to what the jury had done in eliminating its award of compensatory damages from the verdict against SouthPeak and awarding compensatory damages against Phillips and Mroz. Specifically, the initial reaction of the Court and counsel for both sides was that the jury had divided the $357,000 in compensatory damages that it found against SouthPeak in the

initial verdict into two equal moieties, and assigned each half

to Phillips and Mroz:

> MR. HOLDEN: They clearly disregarded that instruction, took the compensatory damages, cut it in half and split it against these two against the instructions of the Court.

> THE COURT: It's not against the instructions.

> MR. THORSEN: It's not against the instructions.

> THE COURT: I said they didn't have to worry about it . . . They award no compensatory damages against the company, just the backpay. Then they split what they viewed as the other damages and awarded half against Phillips and half against Mroz. That's what they did. You can see on the face of it. In that situation, what you do want me to do?

> MR. HOLDEN: I would instruct that they go back up and reconsider because it is impossible to come up with that verdict.

> THE COURT: Why? Of course it's possible.

> MR. THORSEN: It's perfectly logical.

Trial Tr. 971:10-972:4 (Docket No. 149).  Phillips and Mroz now

have made an abrupt about-face to argue that the jury made one

award that is to be shared by Phillips and Mroz. Mem. at 12. But

the record shows that the jury was consistent and unswerving in

its view that the proper award of back pay was $593,000 and that

the proper award for compensatory damages was $357,000 because

both sums (that for back pay and that for compensatory damages)

remained constant across both versions of the verdict form and

23

in the intervening note from the jury. The ineluctable and
mathematical conclusion here is that the jury divided into two
separate $178,500 awards (for a total of $357,000) the amount of
compensatory damages that it found Jones had suffered. There is
really nothing inconsistent about the compensatory award.
Indeed, it is clear on its face. In any event, even if the
verdicts were inconsistent, it is the Court's duty to harmonize
seemingly inconsistent verdicts where practicable, see Gallick
v. Baltimore & Ohio R.R. Co., 372 U.S. 108, 119 (1963). The
Court rules that the jury found that Jones had sustained a total
of $357,000 in compensatory damages and found that Phillips and
Mroz shared that liability equally. The jury thus made two equal
and independent $178,500 assessments against Phillips and Mroz
separately. That is clear on the face of the amended verdict.
Therefore the motion to amend the judgment to reflect a joint
award will be denied.

**5.    The Motion For A New Trial Nisi Remittitur**

   **a.    The Back Pay Award Against SouthPeak**

SouthPeak challenges the amount of the back pay award
against it, arguing that the most the jury could have awarded
based on the evidence and argument presented at trial was
"$460,000 or $470,000." Mem. at 11. Jones responded by conceding
that the amount of back pay damages should be reduced to
$470,000. Opp. at 11.    Thus, the back pay award against

SouthPeak will be reduced, upon SouthPeak's request and Jones' agreement, by $123,000.

The amount of $123,000 represents the total of $38,000, representing Jones' exhausted savings and retirement accounts, and $85,000 in credit card debt that was accrued in the aftermath of her termination.  According to the undisputed evidence, Jones made up for part of her lost SouthPeak income by exhausting the savings and retirement accounts and by incurring the credit card debt in the amounts of $38,000 and $85,000, respectively.  Jones now takes the view that the jury awarded that sum ($123,000) as part of the separate compensatory awards against Phillips and Mroz.  That argument is contrary to Jones' position both at trial, see Trial Tr. 906:14-20 (Docket No. 143), and in post-trial pleadings.  See Plaintiff's Memorandum in Support of Motion for Pre-Judgment Interest and Post-Judgment Interest on Award of Back Pay and for Front Pay in Lieu of Reinstatement, at 4 (characterizing the $123,000 as out-of-pocket expenses appearing as a component of the $593,000 back pay award).  In closing argument, Jones' counsel explicitly asked the jury to consider the out-of-pocket expenses as back pay:

> She also told you that she wiped out her savings. I will call it savings, the 401K, IRA. $38,000. And today there is debt, $85,000 in credit card. None of that was challenged by the defendant in this case. None of it.
> So those are the figures that you have if you think about damages in terms of back pay.

25

Trial Tr. 906:14-20 (Docket No. 143). There is no reason to believe that the jury would credit the evidence about the amount of damages created by exhaustion of Jones' credit and savings while simultaneously disregarding counsel's characterization of those damages as back pay. Furthermore, there is no means by which the jury could have reasonably awarded a sum of $593,000 without adding together the $470,000 in proven back pay with the $123,000 in out-of-pocket expenses.

Clearly, the jury cannot award more in back pay than Jones proved to have lost. At the same time, it is apparent that the jury intended to award damages against SouthPeak for the lost savings and retirement accounts and for the additional debt she incurred. And, although the jury did not have the power to award that additional $123,000 as back pay against SouthPeak, it did have the power and the evidentiary basis to award that sum as compensatory damages against SouthPeak. This misallocation of damages as between legal categories is the type of "clear error of law" that allows this Court to amend a jury's verdict, because this amendment is simply the legally correct characterization of a damage which the jury attributed to SouthPeak and awarded to Jones. See Robinson v. Wix Filtration Corp. LLC, 599 F.3d 403, 407 (4th Cir. 2010). The judgment

against SouthPeak therefore will be amended to award Jones $470,000 in back pay and $123,000 in compensatory damages.

**b.    The Compensatory Damages Award Against Mroz And Phillips**

Mroz and Phillips have also challenged the compensatory damages awarded against them, claiming that the amount is so excessive as to merit a new trial nisi remittitur.  Mem. at 5. In their initial brief, Phillips and Mroz characterized those compensatory damages as exclusively "emotional" and revived a previous argument that emotional damages were unavailable under Sarbanes Oxley.  Id. at 5, 9-10. Jones responded that the compensatory award also included out-of-pocket expenses and reputational damages. Opp. at 6-10. The first of those issues to be addressed is the availability of emotional damages under Sarbanes Oxley; then, it is necessary to determine from the evidence what damages the jury reasonably could have awarded as part of its compensatory damages against Mroz and Phillips. Finally, the Court will assess whether the damages awarded were excessive under the law of the circuit.

As to the availability of emotional damages under Sarbanes Oxley, the Court ruled on the record during a July 12, 2013 conference call that 18 U.S.C. § 1514A(c)(2) does not preclude an award of emotional damages for a retaliation claim under Sarbanes Oxley, and that an award of emotional damages in

27

consistent with 18 U.S.C. § 1514A(c)(1)'s language stating that a prevailing employee "shall be entitled to all relief necessary to make the employee whole." Conf. Call Tr., Docket No. 168, at 21:9-22:19. See also 18 U.S.C. 1514A(c). In making that ruling, this Court embraced the same interpretive position as the Tenth Circuit in Lockheed Martin Corp. v. Admin. Rev. Bd., U.S. Dep't of Labor, 717 F.3d 1121, 1138-39 (10th Cir. 2013). The Defendants has offered no new arguments on this matter. The previous ruling will stand.

As to what types of compensatory damages the jury could have reasonably awarded, Jones' contention that the $178,500 compensatory awards against Mroz and Phillips include the $123,000 in out-of-pocket expenses lacks merit. As discussed supra, and as presented in Jones' own post-trial pleadings,[7] the jury clearly intended to assign those damages to SouthPeak, not to Mroz and Phillips. When those out-of-pocket expenses represent the only logical way that the jury could have reached a sum of $593,000 in back pay, and when Jones' counsel specifically (and erroneously) described such expenses as back pay rather than compensatory damages in closing argument,[8] there

---

[7] See Plaintiff's Memorandum in Support of Motion for Pre-Judgment Interest and Post-Judgment Interest on Award of Back Pay and for Front Pay in Lieu of Reinstatement, at 4.

[8] See Trial Tr. 906:14-20 (Docket No. 143).

is no principled basis to conclude that the jury included that $123,000 in its calculation of compensatory damages.

Jones will not be allowed to bolster her case for compensatory damages against Mroz and Phillips by transferring the jury's intent to award compensatory damages against SouthPeak. If this Court were to permit such a transfer, it would be effectively increasing the damages assessed against Mroz and Phillips. Such an additur is prohibited by the Seventh Amendment. See Dimick v. Schiedt, 293 U.S. 474 (1935).

Jones' argument that the compensatory award includes reputational damages also lacks merit because Jones did not prove damages of that nature at trial. For example, she did not present any evidence as to what her reputation was before and after the wrongful termination. Nor did she offer proof that her reputation in fact had been harmed. The post-trial effort to demonstrate reputational damage is based on the facts that (1) Jones was unsuccessful on nine attempts to secure a job as CFO (2) each discussion in those nine job interviews about termination from that position "was not a good conversation," and (3) in its post-termination SEC filings, SouthPeak was highly critical of Jones. That evidence does not provide a basis for a reasonable jury to award reputational damages where, as here, there was no proof that any of the nine prospective

employers attempting to fill their vacant CFO positions knew about SouthPeak's post-termination SEC filings.

Thus, as Phillips and Mroz contend, the compensatory award can only be considered as emotional distress damages, which Mroz and Phillips argue to be excessive. Jones correctly notes that her evidence on emotional distress was "unrebutted and unchallenged." See Opp. at 9-10. However, that emphasis is misplaced because the proper test is not whether Jones' proofs were rebutted but whether Jones' emotional distress was "demonstrable, genuine, and adequately explained." Price v. City of Charlotte, 93 F.3d 1241, 1252 (4th Cir. 1996). If the testimony satisfies that standard, the jury, as the finder of fact, is permitted to give the testimony greater weight than any evidence presented in rebuttal; if the testimony is not "demonstrable, genuine, and adequately explained," then as a matter of law this Court must curtail the damages award because it lacks substantial evidence to support it.

Jones has also tried to distinguish Fourth Circuit precedent by assigning dispositive significance to the fact that she was terminated from her prior employment (as opposed to demoted or passed over for a promotion). See Opp. at 10-11 (distinguishing Cline v. Wal-Mart Stores, 144 F.3d 294 (4th Cir. 1998), Hetzel v. County of Prince William, 89 F.3d 169 (4th Cir. 1996), and Dennis v. Columbia Colleton Med. Ctr., Inc. 290 F.3d

639 (4th Cir. 2002)). As Jones correctly argues, those decisions do not involve a plaintiff whose employment was terminated. However, Jones' argument ignores several termination cases from other circuits that the Fourth Circuit has cited with approval. See Price, 93 F.2d 1241, 1252-1253 (4th Cir. 1996). For instance, in Ramsey v. American Air Filter Co., Inc., the Seventh Circuit remitted a $75,000 compensatory award for the emotional distress of a plaintiff who successfully sued his employer for discrimination and improper termination. 772 F.2d 1303, 1313-14 (7th Cir. 1985) (cited approvingly by Price, 93 F.3d at 1252-53). The plaintiff presented testimony that he "felt about as low as any man could feel" and "insulted." Id. at 1313. Those statements were corroborated by a former co-worker and the plaintiff's family physician. Id. However, no evidence was presented that the plaintiff had been treated for emotional harm or suffered from depression for a substantial period of time. Id. The Seventh Circuit, while acknowledging that the evidence supported some award of compensation for mental distress, reduced the compensation from $75,000 to $35,000.

In Biggs v. Village of Dupo, the Seventh Circuit remitted a general verdict in favor of a fired police officer and eliminated all compensation for emotional distress. 892 F.2d 1298, 1304-05 (7th Cir. 1990) (cited approvingly by Price, 93 F.3d at 1252). The officer testified that "he was affected

31

emotionally by being fired and that he was concerned over 'the idea of my family going through it.'" Id. at 1304. The officer did not, however, explain how his family was affected, and no other direct testimony or evidence concerning mental distress was introduced to support that given by the plaintiff. Id. The Seventh Circuit found such statements to be conclusory and therefore inadequate, clarifying that the requirement of "demonstrable" emotional distress could not be satisfied by pointing to circumstances which might support an inference of such injury. Id. at 1304-05.

In Cohen v. Bd. of Educ., Smithtown Cent. Sch. Dist., the Second Circuit affirmed a district court's decision to deny a fired schoolteacher any recovery for mental distress. 728 F.2d 160 (2d Cir. 1984). The plaintiff's subjective statements and testimony about his psychiatric consultations were not supported by any medical evidence. Id. at 162. The Fourth Circuit has stated that "[t]he Cohen court's affirmance where subjective emotional distress is unsupported by objective evidence comports with the precept that any emotional distress be demonstrable." Price, 93 F.3d at 1253.

These cases, all endorsed by the Fourth Circuit, indicate that a terminated employee is not exempt from the requirement that, to recover damages for that mental distress, the plaintiff must offer proof beyond conclusory, self-serving testimony. To

32

be sure, the Fourth Circuit also has held that plaintiffs who "were discharged and had difficulty finding alternative employment" can receive greater compensation for their emotional distress, Hetzel v. County of Prince William, 89 F.3d 169, 172 (4th Cir. 1996), but a plaintiff cannot rely on a jury to infer or assume the emotional distress from that discharge. With those precepts in mind, it is necessary to examine the record to determine whether the claim of emotional distress here was "demonstrable, genuine, and adequately explained."

Jones did not present evidence of psychological or psychiatric treatment for emotional distress. Nor did she show any physical injury as a consequence of her emotional distress. However, Jones did offer testimony that showed she had been fired and, as a result, had lost substantial income. She also explained that she was the primary breadwinner in the family and that she felt responsible for providing for the needs of her four children. That ability was compromised when she was fired. And the jury reasonably could infer that the inability to provide for her family was a contributing factor for her emotional distress.

Jones also described the emotional difficulty of explaining her termination to her children, to neighbors, and to business associates. But while loss of income is a factor that can be considered by triers of facts and reviewing courts, see Price,

33

93 F.3d at 1254, general statements of distress from loss of income or termination untethered to particular episodes or outward manifestations cannot be the basis for an award of compensatory damages. Jones' case does not suffer from that defect because her husband presented testimony about the particular manner in which Jones manifested emotional distress:

> Q: Do you ever see her breakdown[sic] emotionally as a result of this ordeal she has gone through?
>
> A: I have been woken up many times in the middle of the night with her crying. Not understanding, like, people do the things they do, and lie about her. And just not knowing why bad things happen. And, you know, nothing I can do except roll over, hug her, and then fall back to sleep . . .

Trial Tr. 431:23-432:5 (Docket No. 143). Jones' testimony, and that of her husband, establishes a basis for the jury to infer that the termination caused significant loss of sleep and emotional distress evinced by chronic crying. In other words, taken together with Jones' own testimony, the testimony of her husband describes outward manifestations of Jones' distress that were apparent to others. Cf. Sloane, 510 F.3d at 503 (noting that the plaintiff "provided evidence that the distress was apparent to others, particularly her family" and alluding to the husband's detailed descriptions of the emotional toll on his wife from specific events).

34

Jones' husband also testified that Jones turned to religion to help her cope with the situation: ". . . she is into faith, she prays a lot. Her father is very religious. They prayed a lot." Trial Tr. 431:12-13 (Docket No. 143). The Fourth Circuit previously has held that, where a plaintiff sought to address her distress through prayer and family support, her testimony should not be discounted for failing to have sought medical attention. Bryant v. Aiken Reg'l Med. Ctrs., Inc., 333 F.3d 536, 547 (4th Cir. 2003).

The resort to prayer and counseling by family members is objective evidence that Jones suffered from emotional distress that was sufficiently serious that Jones could not cope with it alone. And where, as here, Jones lost her job and benefits, she cannot be faulted for foregoing the expense of professional psychiatric or psychological counseling. Moreover, before the advent of such professional counseling, it was not at all unusual for people to seek aid and comfort from faith and family when coping with emotional distress.

Jones' testimony about her extensive search for employment also supports her claim for emotional distress. Jones filed hundreds of employment applications. She landed nine interviews for CFO positions. In each, she was asked to explain her termination as SouthPeak's CFO. According to Jones, those were not "good conversation[s]." Defendants fault Jones for the

understated way in which she explained what happened in those interviews. But the jury could reasonably infer emotional stress in the interviews from the proof that the conversation about her termination from SouthPeak did not go well, and the fact that she did not receive a job offer for the nine CFO positions for which she was interviewed. That evidence is sufficient to support the jury's commonsense evaluation of the distress associated with an inability to secure employment—an inability that was aggravated by the need to repeatedly discuss and explain an unlawful firing in job interviews.

Jones testified that it was "awful to be in a position where you are needing unemployment benefits." In so doing, she described the humiliation of a six-figure corporate officer forced to be on the public dole. That is further evidence of the emotional toll that was caused by the unlawful termination.

In sum, the record, as a whole, establishes that the unlawful termination caused Jones demonstrable, genuine and adequately explained emotional distress of substantial degree. And, the distress persisted for twenty-three months until she secured employment with her current employer. Thus, the question is not whether Jones proved emotional distress damages or whether her emotional distress warranted significant compensation. Rather, the issue is whether the proof supported

36

the amount of compensation for such damages that the jury awarded.

"The Fourth Circuit appears to favor a comparative approach whereby a court deciding a motion for remittitur should look to the evidence presented and awards made in similar cases." Weihua Huang v. Rector and Visitors of University of Virginia, No. 3:11-cv-50, 2013 WL 865845, at *12 (W.D. Va. Mar. 7, 2013).   To support their contention that the compensatory damages verdict against them is excessive, Phillips and Mroz rely principally on Cline v. Wal-Mart Stores, Inc., 144 F.3d 294 (4th Cir. 1998) and Hetzel v. County of Prince William, 89 F.3d 169 (4th Cir. 1996).

In Cline, the plaintiff was demoted, not fired.   There was also no evidence in Cline that the plaintiff "required counseling . . . or [] suffered physical symptoms such as depression or loss of sleep." Cline, 144 F.3d at 305-06.   Here, Jones was fired and lost significant income with the attendant stresses discussed above.   Jones also required counseling (albeit from faith and family) and manifested loss of sleep as a physical symptom.   Thus, Cline does not support the contention of Phillips and Mroz that the verdict is excessive.   Nor does Hetzel, where the "evidence presented at trial concerning Hetzel's emotional distress consisted almost exclusively of Hetzel's own brief, conclusory statements . . . that she had headaches, stress, trouble reading to her daughter and problems

with her family life." Hetzel, 89 F.3d at 171. And, of course, Hetzel did not involve a plaintiff whose employment was unlawfully terminated. The evidence offered by Jones in support of her claim was far more substantial than that tendered by Hetzel. Finally, it cannot be said that Dennis v. Columbia Colleton Med. Ctr., Inc., 290 F.3d 639 (4th Cir. 2002), buttresses the arguments by Phillips and Mroz because there, as the district court found, the plaintiff supported her claim of emotional distress only with "conclusory statements that she was 'devastated' and 'humiliated' by the events of which she complained." Id. at 653. That simply is not the limit of the proof offered by Jones.

A review of the evidence presented in this case and awards in similar cases leads the Court to conclude that the Weihua Huang case is the closest analogue. Huang also was unlawfully terminated and he too subsequently struggled to find suitable employment, dislodging him from his former role as the breadwinner in his marriage. Id. at *11-*12. Huang also presented testimony about loss of income and physical manifestations of his distress (including disrupted sleep patterns). Id. at *12. Finally, Huang also declined to seek medical attention for his distress. Id. at *12. These important factual similarities prompt the Court to use the Weihua Huang remittitur award of $100,000 as the appropriate

38

computation for decision against which to measure the award of damages for emotional distress to Jones.

Of course, there are factual differences between the cases. For instance, in addition to insomnia, Huang showed that he had sustained significant weight loss. Id. at *12. Huang also testified that the termination put a strain on his marriage, id., another aggravating factor that is absent here. On the other side of the ledger, Huang did not feel compelled to seek solace in family or spiritual counselling, and there is no indication that Huang had any children whose welfare depended on his earnings. These differences notwithstanding, in light of all the evidence presented and the comparison with Huang, the Court finds that an award of $100,000 to Jones is sufficient to compensate her for the emotional distress that was reasonably and sufficiently demonstrated at trial. An award of that amount is not excessive when compared to the back pay awarded in this case, the compensatory awards in similar cases, and the evidence that Jones submitted to support her claims. Given that it was the jury's finding that the total amount of compensatory damages ($357,000) should be equally divided between Phillips and Mroz ($178,000 each), it is appropriate to divide the total compensatory award, as reduced ($100,000), equally assigning $50,000 each to Phillips and Mroz.

**CONCLUSION**

For the foregoing reasons, SOUTHPEAK DEFENDANTS' MOTION FOR REMITTITUR, A NEW TRIAL, AND/OR TO AMEND THE JUDGMENT UNDER RULES 59 AND 60 (Docket No. 15) will be granted in part and denied in part as follows: (1) the motion for new trial based on the alleged error of the Court in entering the revised verdict will be denied; (2) the back pay award of $593,000 against SouthPeak will be amended to reflect a back pay award of $470,000 and a compensatory award of $123,000; (3) the motion to amend the judgment to reflect a single joint award of compensatory damages against Mroz and Phillips will be denied; (4) the motion for a new trial nisi remittitur because of the excessive verdicts against Phillips and Mroz will be granted; (5) the separate compensatory awards against Phillips and Mroz in the amount of $178,500 will each be reduced to $50,000. The plaintiff will have the option of accepting the reduced awards or proceeding to a new trial.

It is so ORDERED.

_____  /s/   _REP_____

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date:  October  29, 2013