IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division



ANDREA GAIL JONES,

    Plaintiff,

v.                               Civil Action No. 3:12cv443

SOUTHPEAK INTERACTIVE
CORPORATION OF DELAWARE,
et al.,

    Defendants.

### MEMORANDUM OPINION

This matter is before the Court on the PLAINTIFF'S MOTION FOR PRE-JUDGMENT AND POST-JUDGMENT INTEREST ON AWARD OF BACK PAY AND FOR FRONT PAY IN LIEU OF REINSTATEMENT (ECF No. 147). The Plaintiff has submitted a Memorandum in Support of the Motion ("Memorandum," ECF No. 148), to which a Response in Opposition ("Opposition," ECF No. 153) has been filed. The Plaintiff has also filed a Reply to the Opposition ("Reply," ECF No. 155). For the reasons set forth herein, the motion will be denied in part.

### PROCEDURAL BACKGROUND AND STATEMENT OF FACTS

This action arises out of Andrea Jones' ("Jones") tenure and termination as Chief Financial Officer ("CFO") of SouthPeak, a publisher of video games based in Midlothian, Virginia. Jones was named SouthPeak's Chief Financial Officer in October 2007.

At all times relevant to this action, Terry M. Phillips ("Phillips") was Chairman of the Board of SouthPeak and Melanie J. Mroz ("Mroz") was the President, Chief Executive Officer, and a Director of SouthPeak.

In February 2009, Phillips and Mroz agreed that Philips would advance $307,400 of his personal funds to enable SouthPeak, which was otherwise financially unable to do so, to purchase for its inventory 50,400 units of a computer game from Nintendo. After SouthPeak received shipment of the Nintendo games, the Vice-President of Operations at SouthPeak, Patrice Strachan, after talking with Phillips, instructed: (a) that the inventory be reflected on the books of the company, but (b) that the advance made by Phillips not be listed on SouthPeak's books as a payable or a liability. Strachan also directed that no one discuss the advance with Jones.

As a result, SouthPeak's quarterly financial report to the Securities and Exchange Commission ("SEC") reflected the inventory, including some sales thereof, but did not reflect the cost of purchasing that inventory. At some point toward the end of May 2009, Jones became aware of this discrepancy. Based on her conversations with persons at the company, Jones concluded that the failure to report the advance was part of an attempt to inflate SouthPeak's reported profits.

Between June 2009 and August 2009, Jones made several reports about the financial irregularity to the Audit Committee of SouthPeak's Board of Directors and to the company's outside counsel, none of which led to any remedial action. On August 12, 2009, Jones filed a complaint with the Enforcement Division of the SEC. On August 14, 2009, Phillips and Mroz informed Jones that her employment was being terminated effective immediately.

On April 21, 2011, the SEC initiated cease-and-desist proceedings against SouthPeak and a SouthPeak officer who was not a defendant in this action.[1] The result of the SEC's investigation was a Consent Order, finding that SouthPeak and the named corporate officer violated Sections 13(a), 13(B)(2)(A) and 13(b)(2)(B) of the Securities and Exchange Act, and ordering the responsible parties to cease-and-desist from future violations of the Act. The factual basis for the SEC's finding of securities law violations was the unreported payment by Phillips that had initially aroused Jones's concerns.

Believing that the termination of her employment violated the anti-retaliation provision of the Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745 (2002)(hereinafter "SOX" or "Sarbanes-Oxley"), Jones timely filed an administrative

---

[1] Phillips was named as a relevant person in the proceedings, but was not a named defendant. Mroz was not named in the proceedings.

complaint with Occupational Safety and Health Administration ("OSHA") as required by SOX. See 18 U.S.C. § 1514A(b)(1)(A) and 29 C.F.R. § 1980.103. On July 23, 2010, Jones notified OSHA of her intention to pursue the matter in the district court as permitted by SOX, 18 U.S.C. § 1514A(b)(1)(B). On June 18, 2012, Jones filed this action against SouthPeak as well as Phillips and Mroz alleging that her employment had been terminated in retaliation for her report to the SEC and seeking relief as provided in SOX, codified at 18 U.S.C. § 1514A, and the Dodd-Frank Wall Street Reform Act of 2010, codified at 15 U.S.C. § 78u-6. After the Court dismissed Jones' claim for relief under the Dodd-Frank Act, Jones' claim for relief under SOX proceeded to trial.

Jones claimed that her employment was terminated in retaliation for her whistleblowing activity. All three Defendants were represented by the same lawyer. All three defended in large measure on the theory that Jones' employment was terminated because she was incompetent. Phillips and Mroz also defended on the additional theory that they had done nothing wrong and therefore were not liable even if the corporation was.

On July 18, 2013, after a four-day trial, the jury returned a finding that all three Defendants were liable to Jones. The jury awarded Jones $593,000 in back pay against SouthPeak,

4

$178,500 in compensatory damages against Phillips, and $178,500 in compensatory damages against Mroz. Jones promptly filed the motion seeking pre-judgment and post-judgment interest on the back pay award, as well as front pay in lieu of reinstatement. The Court subsequently amended the judgment to reflect an award of $470,000 in back pay and $123,000 in compensatory damages against SouthPeak, and remitted the awards against Mroz and Phillips to $50,000 against each defendant. (ECF Nos. 169, 170). The Plaintiff has accepted the remittitur. (ECF No. 173).

## DISCUSSION

### 1. Motion for Front Pay in Lieu of Reinstatement

The Court already has issued a separate order granting Jones' request for pre-judgment and post-judgment interest on the back pay award, (ECF No. 172), and now turns its attention to the part of Jones' motion that seeks an award of front pay.

#### A. The Availability of Front Pay for Sarbanes-Oxley Plaintiffs

The first issue is whether a plaintiff who prevails in an action under the retaliation provisions of Sarbanes-Oxley can receive an award of front pay. The statute does not mention front pay as among the remedies available to a prevailing plaintiff. However, it does provide that "[a]n employee prevailing [on a Sarbanes-Oxley retaliation claim] shall be entitled to <u>all relief necessary</u> to make the employee whole."

5

18 U.S.C. § 1514A(c)(1) (emphasis added). And reinstatement is specifically listed as one component of the statutorily permitted compensatory damages. 18 U.S.C. § 1514A(c)(2)(A). The parties have not cited, and the Court has not found, any judicial decision awarding front pay in lieu of reinstatement under SOX.

However, the Department of Labor's Interim Final Rule on SOX Retaliation Complaints states that: "Front pay has been recognized as a possible remedy in cases under Sarbanes-Oxley . . . in circumstances where reinstatement would not be appropriate." Procedures for the Handling of Retaliation Complaints Under Section 806 of the Sarbanes-Oxley Act of 2002, as Amended, 76 Fed. Reg. 68084, 68088 (Nov. 3, 2011). The Interim Rule cites two Sarbanes-Oxley administrative decisions for that proposition. See Brown v. Lockheed Martin Corp., 2008-SOX-49, 2010 WL 2054426, at *55 (Jan. 15, 2010); Hagman v. Washington Mutual Bank, Inc., 2005-SOX-73, 2006 WL 6105301, at *32 (Dec. 19, 2006). Other administrative decisions that predate the Interim Rule have reached the same conclusion. See Welch v. Cardinal Bankshares Corp., ARB No. 06-062, ALJ No. 2003-SOX-15 (ARB June 9, 2006); Kalkunte v. DVI Financial Services, Inc., 2004-SOX-00056, 2005 WL 4889006 (July 18, 2005).

Those administrative decisions are consistent with the controlling decisions of the United States Court of Appeals for

the Fourth Circuit respecting front pay under other statutes with similar remedial provisions. For example, the Fourth Circuit, while affirming a general preference for reinstatement as a forward-looking remedy to a wrongful termination in an action under the Age Discrimination in Employment Act ("ADEA"), has recognized that reinstatement may not be appropriate in cases where: (1) the parties have become inextricably mired in hostility; (2) there is no comparable position available with the plaintiff's former employer; (3) the plaintiff's former employer is no longer operating; or (4) the anticipated period of reinstatement is relatively short. See Duke v. Uniroyal, Inc., 928 F.3d 1418, 1423-24 (4th Cir. 1991).

"The infinite variety of factual circumstances that can be anticipated do not render any remedy of front pay susceptible to legal standards for awarding damages. Its award, as an adjunct or alternative to reinstatement, must rest in the discretion of the court in shaping the appropriate remedy." Id. at 1424. At the same time, the Fourth Circuit makes clear that the potential for a windfall to the plaintiff should temper a court's enthusiasm for any award of front pay. Id.[2]

---

[2] In Duke, the Court of Appeals instructed that, when both legal and equitable remedies are requested, the proper procedure is for the jury to decide the legal remedy and, thereafter, the court "conducts a trial in equity to resolve issues of equitable relief." Duke v. Uniroyal, Inc., 928 F.2d at 1422. Here, the

7

The Fourth Circuit has demonstrated a willingness to extend Duke beyond the context of the ADEA. In Cline v. Wal-Mart Stores, Inc., 144 F.3d 294 (4th Cir. 1998), a case involving the Federal Medical Leave Act ("FMLA"), the Fourth Circuit affirmed that front pay was an equitable remedy that could be ordered by a trial court. See id. at 307; see also Nichols v. Ashland Hosp. Corp., 251 F.3d 496, 504 (4th Cir. 2001) (citing Cline in conjunction with Duke's admonition about possible windfalls).

As a matter of first impression, the Court agrees with the Department of Labor regulations and previous administrative decisions that have offered the possibility of front pay in lieu of reinstatement. The views expressed therein are in accord with the express purpose of the remedial provisions of Sarbanes-Oxley and the views of our Court of Appeals, as thoroughly explained in Duke.

18 U.S.C. § 1514A(c)(1) states that "an employee prevailing in any [retaliation] action shall be entitled to all relief necessary to make the employee whole." § 1514A(c)(2)(A) specifically includes reinstatement as one type of available relief. SouthPeak has argued that, because front pay is not specifically mentioned in § 1514A(c)(2)(A), front pay should not be available to plaintiffs who have successfully sued under SOX

---

parties submitted the front pay issue to the Court for decision on the record made at trial.

for retaliation claims. Response at 2. If the Court were to adopt the SouthPeak's construction of § 1514A(c) and bar any remedy that was not specifically listed in § (c)(2)(A), the general mandate of § (c)(1) to make the employee whole would be rendered void and superfluous. Such a construction would violate the well-known interpretative presumption against surplussage, see In re Total Realty Management, LLC, 706 F.3d 245, 251 (4th Cir. 2013); therefore this Court will not embrace it.

Furthermore, although Duke was a case involving the ADEA rather than SOX, the Fourth Circuit's broad discussion of reinstatement and front pay seems equally applicable in a SOX retaliation context. Duke held that "front pay is an available remedy to complete the panoply of remedies available to avoid the potential of future loss." Front pay was seen as a complement to the remedy of reinstatement, which was expressly authorized by the ADEA, and another tool for effectuating the purposes of the ADEA. See 29 U.S.C. § 626(b) ("In any action brought to enforce this chapter the court shall have jurisdiction to grant such legal or equitable relief as may be appropriate to effectuate the purposes of this chapter, including . . . reinstatement or promotion"). The same complementary role can be ascribed to front pay in a SOX action such as this one, where reinstatement is impossible and the prevailing plaintiff is entitled to be made whole. Here, as in
9

Duke and Cline v. Wal-Mart Stores, Inc., the remedial provision of the applicable statute did not expressly authorize front pay as an equitable remedy. See Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 307 (4th Cir. 1998); 29 U.S.C. § 2617(a)(1)(B) (FMLA provision authorizing "such equitable relief as may be appropriate, including employment, reinstatement, and promotion").

Given the paucity of support for SouthPeak's argument on this issue, the presumption against superfluity, and the willingness of the Fourth Circuit to allow district courts to consider front pay as a complementary remedy for statutes that have a broad remedial purpose and explicit authorization for reinstatement, the Court concludes that front pay is a potential remedy for plaintiffs who prevail under a claim for retaliation in violation of Sarbanes-Oxley.

### B. The Availability of Front Pay In This Action

The second issue is whether Jones can obtain front pay in this action, where SouthPeak, the defendant-employer, has effectively ceased to operate and continues to exist only for the purpose of collecting legal judgments. SouthPeak argues that, because it no longer employs a Chief Financial Officer and is for practical purposes "no longer in business," front pay is not appropriate. Opp. at 5. For its part, SouthPeak relies on an unpublished Fourth Circuit opinion for the proposition that

"[f]ront pay is designed to place a plaintiff in the financial position he would have been in had he been reinstated." Loveless v. John's Ford, Inc., 232 Fed. Appx. 229, 238 (4th Cir. 2007). From that undoubtedly true premise, SouthPeak reasons that an award of front pay for a plaintiff whose position has been eliminated would place a plaintiff "in a better position than she would have occupied had she not been fired." That position is untenable.

Indeed, as Loveless itself acknowledges, "[t]he equitable remedy of front pay is generally available when an employer has terminated an employee unlawfully and the employee's reinstatement is not possible." Id. (citing Duke v. Uniroyal, Inc., 928 F.3d 1413, 1423 (4th Cir. 1991)). And Duke noted that two of the situations in which reinstatement may be inappropriate involve a company that is no longer in business and a company that no longer has a comparable position available. See Duke, 928 F.3d at 1423. Furthermore, "[f]ront pay is . . . compensation for the post-judgment effects of past discrimination," Shore v. Federal Exp. Corp., 777 F.2d 1155, 1158 (6th Cir. 1985), quoted in Pollard v. E.I. du Pont de Nemours & Co., 532 U.S. 843, 850 (2001). Front pay also has been more precisely defined as "a lump sum . . . representing the discounted present value of the difference between the earnings [an employee] would have received in his old employment and the

earnings he can be expected to receive in his present and future, and by hypothesis, inferior, employment." McKnight v. Gen. Motors Corp., 908 F.2d 104, 116 (7th Cir. 1990), cert. denied, 499 U.S. 919 (1991), partially superseded by Civil Rights Act of 1991, Pub. L. 102-166, 105 Stat. 1071 (codified at 42 U.S.C. 1981 et seq.). If a plaintiff has been diverted onto a less profitable career path through the unlawful actions of his former employer, an award of front pay to compensate the plaintiff until such time as he can regain his former career track is not a windfall. This is true without regard to whether the former employer continues to operate and to maintain a comparable opening within the company. Hence, SouthPeak's windfall argument fails.

Although the calculation of front pay is an inherently speculative venture, it cannot be "unduly speculative." See Barbour v. Merrill, 48 F.3d 1270, 1280 (D.C. Cir. 1995); McKnight v. Gen. Motors. Corp., 973 F.2d 1366, 1372 (7th Cir. 1992). Accordingly, the plaintiff bears the burden of presenting "the essential data necessary to calculate a reasonably certain front pay award." McKnight, 973 F.2d at 1372. One district court has, in the course of ruling on a proposed award for front pay, collected and summarized the various factors that the Courts of Appeals have identified as significant in the front pay analysis. Those factors include:

- (1) the plaintiff's age,
- (2) the length of time the plaintiff was employed by the defendant employer,
- (3) the likelihood the employment would have continued absent the discrimination,
- (4) the length of time it will take the plaintiff, using reasonable effort, to secure comparable employment,
- (5) the plaintiff's work and life expectancy,
- (6) the plaintiff's status as an at-will-employee,
- (7) the length of time other employees typically held the position lost,
- (8) the plaintiff's ability to work,
- (9) the plaintiff's ability to work for the defendant-employer,
- (10) the employee's efforts to mitigate damages, and
- (11) the amount of any liquidated or punitive damage award made to the plaintiff

Ogden v. Wax Works, Inc., 29 F.Supp.2d 1003, 1012-15 (N.D. Iowa 1998) (collecting cases from the First, Second, Third, Fourth, Sixth, Seventh, Eighth, Ninth, Tenth, Eleventh, and D.C. Circuits). These factors assist a district court in judging the appropriateness of a proposed front pay award once the plaintiff has posited the amount of the proposed award, its duration, and the applicable discount rate. Cf. McKnight, 973 F.2d at 1372.

13

Although the <u>Ogden</u> list is not all-inclusive, it helps to illustrate the difficulties that a court faces when contemplating a front pay award against a defendant-employer that has ceased operations. The length of time the defendant employed the plaintiff (factor 2) and the likelihood the employment would have continued except for the discrimination (factor 3) become moot, because the plaintiff would not have been employed once the company ceased to operate. The plaintiff's status as an at-will employee (factor 6) and the typical length of tenure in the position (factor 7) also become mostly irrelevant because of the elimination of both the plaintiff's position and any comparable to it within the company. The plaintiff's ability to work for the specific defendant-employer (factor 9) also loses all of its value in the front pay analysis for a no longer operational defendant-employer.

Thus, the intervening termination of a defendant-employer's business operations eliminates or severely reduces the utility of half of the front pay factors identified by the various circuit courts. To be sure, the Court does have before it information about Jones' age, ability to work, and efforts to mitigate damages. The Court is also aware that there are no punitive or liquidated damages that might counsel against a front pay award. But these factors are by themselves

insufficient to give the Court a grasp of the facts sufficient to calculate a reasonable front pay award for Jones.

Although it is conceptually possible for a plaintiff to obtain front pay from a defendant-employer that has effectively gone out of business altogether, such a plaintiff will be obliged to produce more data about future earnings prospects than a plaintiff who confronts a defendant-employer that continues to operate and employ individuals in a similar capacity. In addition to the amount of the proposed award, the applicable time period, and the applicable discount rate, the plaintiff must give a court an understanding of how the plaintiff's income and career prospects would have been affected if the position with the defendant-employer had been naturally terminated in the course of business. If, due to the vagaries of the job market and the particular demand for the plaintiff's skills, the plaintiff's future earnings would have been depressed even if there was a lawful termination or lay off as part of a corporate restructuring, then front pay would be an unearned windfall to the plaintiff. By contrast, front pay would seem appropriate when the plaintiff can show that she would have been well-positioned to weather a temporary layoff and resume employment at a salary level commensurate with the amount of front pay sought.

This showing may, but does not necessarily, require expert testimony about the plaintiff's employment prospects in a hypothetical scenario. Plaintiffs who possess high-demand skills or live in areas with robust job markets will find it easier to convince courts that any decline in their future earnings potential should be attributed to the unlawful nature of their termination. In any event, it is incumbent on the plaintiff to offer proof that minimizes the degree of speculation inherent in what will almost inevitably be a somewhat speculative venture – an assessment of the damage done by the defendant to the earnings potential of a plaintiff who would have lost his job even in the absence of misconduct by the defendant-employer.

If the Defendants in this action had not retaliated against Jones, she still would have been laid off by SouthPeak in 2011 in the midst of a struggling job market. Jones' previous position, Chief Financial Officer, is a high-ranking position with limited openings. Although Jones did present evidence that she interviewed for nine other CFO positions after her unlawful termination, the record contains no information about the compensation levels for those positions. Nor is there proof that the hypothetical, laid-off plaintiff would have been more successful in obtaining those positions than the actual, unlawfully terminated plaintiff – here Jones.

Indeed, Jones' effort to justify the proposed front pay award is most meager. The amount of the award proposed by Jones is based on an annual income "gap" of $88,510 and a period of five years. The "gap" here is the calculated difference in total compensation between Jones' current job and her former job with SouthPeak. But that calculation implicitly asks the Court to assume that, after having been lawfully terminated, Jones would have been able to obtain another CFO position immediately, without suffering any decrease in compensation. Jones has presented no evidence that would support such an inference. Furthermore, the suggested front pay period of five years is based solely on a reference to Doyle v. Hydro Nuclear Services, ARB Nos. 99-041, 99-042, 00-012, 89-ERA-22, at 8 (ARB May 17, 2000). Even a cursory review of those administrative proceedings reveals that the five-year award in Doyle was supported by expert testimony that the plaintiff would require up to five years of psychotherapy in order to make him employable again. Doyle v. Hydro Nuclear Services, ARB Nos. 99-041, 99-042, 00-012, 89-ERA-22 (ARB Sept. 6, 1996). That testimony went directly to the fifth front pay factor recognized in Ogden and ensured that the award was not unduly speculative. In this action, Jones' proposed five-year period is an entirely arbitrary choice unsupported by any lay or expert analysis.

In the absence of sufficient proof by Jones to justify the proposed front pay award or to isolate the future effects of her unlawful termination from the effects of being laid off due to the elimination of her position, the Court must deny the motion for front pay in lieu of reinstatement because any award of front pay would be entirely speculative.

## CONCLUSION

For the foregoing reasons, PLAINTIFF'S MOTION FOR PRE-JUDGMENT AND POST-JUDGMENT INTEREST ON AWARD OF BACK PAY AND FOR FRONT PAY IN LIEU OF REINSTATEMENT (Docket No. 147) will be denied to the extent that the motion seeks an award of front pay.

It is so ORDERED.

_____/s/_____ REP
Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: November 19, 2013